UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHIRLEY HOPKINS,

    Plaintiff,

    v.            Case No. 23-C-1001

CHAMPION CARE LLC, et al.,

    Defendants.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION OF NOTICE TO SIMILARLY SITUATED PERSONS**

---

  This matter arises out of alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Wisconsin's Wage Payment and Collection Laws. Plaintiff Shirley Hopkins brought suit on behalf of herself, a Rule 23 putative class, and an FLSA collective against Defendants Champion Care LLC, The Bay at Burlington Health and Rehabilitation LLC, and The Bay at St. Ann Health and Rehabilitation Center LLC. This matter comes before the court on Hopkins' motion for conditional certification and authorization of notice to similarly situated persons pursuant to 29 U.S.C. § 216(b). For the reasons below, the court denies the motion.

## BACKGROUND

  Champion Care is a New York limited liability company that provides management and consulting services to healthcare facilities in several states, including Wisconsin. Answer, Dkt. No. 12 at ¶ 10. Two of those facilities it provides management and consulting services to are The Bay at Burlington and The Bay at St. Ann. Dkt. Nos. 24-1, 24-2 & 24-3. As specified in its operating agreements with these two facilities, Champion Care managed the hourly employees at those locations. *Id*.

Champion Care implemented two policies relevant to the claims in this case. First, it utilized a time-rounding policy that rounded employees' actual hours worked to the nearest quarter hour. Dkt. Nos. 24-4 & 24-5. It instructed workers that they must not clock in more than seven minutes before their shift and not clock out more than seven minutes after it. *Id*. Second, Champion Care provided various bonuses to employees, such as shift pickup bonuses, sign-on bonuses, referral bonuses, travel bonuses, and birthday bonuses. Dkt. Nos. 24-6 & 24-10.

Hopkins worked at The Bay at Burlington and The Bay at St. Ann as a Certified Nursing Assistant and Licensed Practical Nurse. Dkt. No. 24-6 at 2–3. During her time at each location, Hopkins was subject to the rounding policy. Dkt. No. 24-8. She also received a handful of bonuses while working at the Burlington location. Dkt. No. 24-12.

On June 23, 2023, the defendants terminated Hopkins. Answer ¶ 33. Less than a month later, Hopkins filed this lawsuit alleging violations of the FLSA and Wisconsin's wage and hour laws. Hopkins alleges that the defendants' rounding system shaved time off her weekly hours worked such that they did not accurately pay her. Compl. ¶¶ 101–12. She also claims that the defendants underpaid her for overtime because they did not include the bonuses she received as part of her regular rate of pay for purposes of the overtime calculation. *Id*. ¶¶ 113–24.

In addition to her own claims, Hopkins brought this action on behalf of a putative class for the Wisconsin claims pursuant to Federal Rule of Civil Procedure 23 and a collective for the FLSA claims pursuant to 29 U.S.C. § 216(b). She now seeks to conditionally certify two FLSA collectives:

> **Timekeeping Collective:** All current and former hourly-paid employees who at any time between [date three (3) years prior to the date notice is authorized by the Court] and [the date notice is authorized by the Court], worked at Bayview Assisted Living, Beloit Health and Rehabilitation Center, Burlington Health and Rehabilitation Center, Dyersburg Health and Rehabilitation Center, Eastview Health and Rehabilitation Center, Garden View Assisted Living, Highlands Health and Rehabilitation Center, Madison Health and Rehabilitation Center, Manahawkin

Health and Rehabilitation Center, Monroe Health and Rehabilitation Center, Muskego Health and Rehabilitation Center, North Ridge Health and Rehabilitation Center, Nu Roc Health and Rehabilitation Center, Oconto Health and Rehabilitation Center, Riverside Health and Rehabilitation Center, Sheridan Health and Rehabilitation Center, St. Ann Health and Rehabilitation Center, Suring Health and Rehabilitation Center, Waters Edge Health and Rehabilitation Center, and/or Woodlands Home Health, and recorded their hours worked utilizing the facility's electronic timekeeping system.

**Bonus Collective**: All current and former hourly-paid employees who at any time between [date three (3) years prior to the date notice is authorized by the Court] and [the date notice is authorized by the Court], worked at Bayview Assisted Living, Beloit Health and Rehabilitation Center, Burlington Health and Rehabilitation Center, Dyersburg Health and Rehabilitation Center, Eastview Health and Rehabilitation Center, Garden View Assisted Living, Highlands Health and Rehabilitation Center, Madison Health and Rehabilitation Center, Manahawkin Health and Rehabilitation Center, Monroe Health and Rehabilitation Center, Muskego Health and Rehabilitation Center, North Ridge Health and Rehabilitation Center, Nu Roc Health and Rehabilitation Center, Oconto Health and Rehabilitation Center, Riverside Health and Rehabilitation Center, Sheridan Health and Rehabilitation Center, St. Ann Health and Rehabilitation Center, Suring Health and Rehabilitation Center, Waters Edge Health and Rehabilitation Center, and/or Woodlands Home Health, and who, at any time during that period, received a bonus, such as a shift pickup, sign-on, and/or traveling bonus, and who worked over forty (40) hours in any workweek to which such bonus applied.

Dkt. No. 22 at 2. Hopkins argues she has a reasonable basis for believing that she and the collective members are similarly situated. She also requests the court authorize notice and order the defendants to provide an Excel spreadsheet containing the names, mailing addresses, and emails of all potential plaintiffs included in the collectives.

## ANALYSIS

As Hopkins notes, most district courts in the Seventh Circuit use a two-step approach in FLSA collective actions. *See Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653–54 (S.D. Ill. 2022). Under the first step, often called "conditional certification," a court determines if the plaintiff and members of the proposed class are sufficiently "similarly situated" to send notice to the prospective plaintiffs. *Id*. at 653. Proving similarity at this step is a low bar and usually occurs after minimal discovery. *Id*. If the court authorizes conditional certification and notice, the parties

3

complete discovery and set a deadline for potential plaintiffs to opt in to the collective. *Id*. at 654. Then, at step two, the court engages in a more rigorous review to determine whether the plaintiffs are, in fact, similarly situated such that they may proceed to trial collectively. *Id*.

This court recently abandoned the two-step approach. *See Laverenz v. Pioneer Metal Finishing, LLC*, No. 22-C-692, 2024 WL 3887110, at *6–10 (E.D. Wis. Aug. 21, 2024). In its place, the court adopted the Fifth Circuit's procedure set forth in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021). *Laverenz*, 2024 WL 3887110, at *9. Moving forward, the court will "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated." *Id*. (quoting *Swales*, 985 F.3d at 441). The parties will then be directed to "engage in limited discovery on the issue of similarity, culminating in a motion for notice." *Id*.

In moving for notice, "the plaintiff will need to prove similarity by a preponderance of the evidence." *Id*. The court will employ three factors to determine similarity: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id*. Moreover, the court will inquire into the merits. *Id*. That way, the court will not risk sending notice to potential plaintiffs where the plaintiff's claims lack merit. *Id*.

If a plaintiff fails to meet her burden at the notice stage, then the case will proceed to discovery, motion practice, and trial (if the claims survive motions). *Id*. If the court grants notice, however, then the case will similarly proceed to discovery but will also contain a deadline for the potential plaintiffs to opt in. *Id*. Then, after the close of the opt-in deadline and discovery, the court will address dispositive motions (if any) and whether the plaintiffs' cases "should be tried together or severed into multiple trials." *Id*. The court will apply these principles to Hopkins' current motion for conditional certification and for court-authorized notice.

4

**A. Scope of Notice**

To begin, Hopkins asks to notify hourly employees at 20 Champion Care–affiliated locations of this action. Even though she only worked at two of the facilities—The Bay at Burlington and The Bay at St. Ann—and only eight shifts at The Bay of St. Ann, Hopkins contends that she is similarly situated to the hourly employees at all twenty of the facilities and asserts that Champion is the employer at each of them. Hopkins cites two sources for this assertion. First, she attached the operating agreements between Champion Care, The Bay at Burlington, and The Bay at St. Ann, which assign to Champion Care various staffing duties. Dkt. Nos. 24-1, 24-2 & 24-3. Second, Hopkins cites to the deposition testimony of Champion Care's Regional Director of Operations Corina Krueger. Krueger Dep. at 14:21, Dkt. No. 23. Attached as an exhibit to Krueger's deposition is a screenshot of Champion Care's website listing 20 "locations." Kreuger Dep. Ex. 1, Dkt. No. 23-1. Krueger testified that, as the website says, Champion Care operates at 20 locations. Kreuger Dep. at 26:03.

The FLSA makes *employers* liable for the practices Hopkins complains of. *See* 29 U.S.C. § 216(b); *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015) ("The FLSA is intended for the protection of employees, and applies to all employers in the free market, whether private or public." (citations omitted)). Based on this record, Hopkins has not proven that Champion Care employs the hourly workers at the 18 additional locations. Nor has Hopkins established that she is similarly situated to the hourly employees at each facility.

The record reflects that Champion Care manages the facilities, but that they operate as independent entities. Krueger Dep. at 39:06–08 ("Champion is the management company. But each facility on its own is its own entity."). Each facility employs its own human resources director, though there is also a VP of human resources that is employed by Champion Care. *Id.* at 31:07–09. Champion Care has minimal involvement in the hiring process. *Id.* at 35:11–15.

5

Benefits, such as paid time off, holiday, things of that nature, vary facility by facility. *Id.* at 37:15–21; 39:8 ("benefits will differ from building to building"). Although all of the facilities apparently use the Smartlinx timekeeping system, Krueger was unable to describe how it operates at the various facilities, and Hopkins offered no evidence from which to conclude it operates in the same manner she experienced.

Based upon this evidence, Hopkins has failed to carry her burden to show that Champion Care is an "employer" under the FLSA at the 18 other facilities and that she is similarly situated to the hourly employees at those facilities. As she has not filed suit against those facilities individually, they are nothing more than unrelated third parties. Accordingly, the court denies Hopkins' request to notify the hourly employees of facilities other than those at which she worked: The Bay at Burlington and The Bay at St. Ann.

**B. Time Rounding**

Turning to the request to notify employees affected by the time rounding policies, Hopkins has failed to prove Champion Care, The Bay at Burlington, and The Bay at St. Ann violated the FLSA. The Department of Labor permits neutral, time rounding as long as it averages out:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). To prove that a rounding policy did not operate neutrally, a plaintiff "cannot cherry-pick a pay period or two; the rounding policy must 'average out *in the long-term*.'" *Laverenz*, 2024 WL 3887110, at *11 (quoting *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1077 (9th Cir. 2016)).

6

Case 1:23-cv-01001-WCG   Filed 02/12/25   Page 6 of 11   Document 29

Hopkins offers two pieces of evidence to prove the defendants' time rounding violated the FLSA. First, she cites the policies which instruct employees at The Bay at Burlington and The Bay at St. Ann to neither punch in more than seven minutes prior to their shift nor punch out more than seven minutes after it. Dkt. Nos. 24-4 at 7 & 24-5 at 6. Hopkins takes this to mean that the rounding policy always operates to the employees' detriment because the times are rounded to the nearest quarter hour. As proof, she provides evidence that, during seven of her shifts, the rounding policy operated against her:

| In Time | Out Time | Rounded Hours | Actual Hours |
|---|---|---|---|
| 1/26/2022 22:42 | 1/27/2022 7:47 | 9 | 9.08 |
| 1/27/2022 22:45 | 1/28/2022 8:19 | 9.5 | 9.57 |
| 1/31/2022 22:42 | 2/1/2022 7:31 | 8.75 | 8.82 |
| 2/2/2022 22:59 | 2/3/2022 7:20 | 8.25 | 8.35 |
| 2/4/2022 22:34 | 2/5/2022 7:16 | 8.75 | 8.70 |
| 2/5/2022 22:31 | 2/6/2022 8:04 | 9.5 | 9.55 |
| 2/6/2022 22:38 | 2/7/2022 7:16 | 8 | 8.63 |

Dkt. No. 22 at 8 (citing Dkt. No. 24-8). This is not enough. Hopkins worked for Champion Care for five years. Compl. ¶¶ 31–33. She presumably worked hundreds, if not thousands, of shifts over that time. To cherry-pick seven of her shifts over this five year period is not enough to prove a violation of law; she must show that the policy operated against her "*in the long run.*" *Corbin*, 821 F.3d at 1077; *Laverenz*, 2024 WL 3887110, at *11.

That is not the only problem with Hopkins' evidence. Champion Care provided the declaration of Director of Payroll Shirly Shoshan, who excerpted her own snapshot of Hopkins' timesheets:

| In time | Out time | Rounded Hours | Actual Hours |
|---|---|---|---|
| 3/16/2022 22:33 | 3/17/2022 7:26 | 9 | 8.88 |
| 3/18/2022 22:30 | 3/19/2022 7:13 | 8.75 | 8.72 |
| 3/19/2022 22:35 | 3/20/2022 7:07 | 8.5 | 8.53 |
| 3/20/2022 22:46 | 3/21/2022 7:11 | 8.5 | 8.42 |
| 3/21/2022 22:37 | 3/22/2022 6:51 | 8.25 | 8.23 |
| 3/23/2022 22:36 | 3/24/2022 6:55 | 8.5 | 8.32 |
| 3/24/2022 22:42 | 3/25/2022 8:25 | 9.75 | 9.72 |
| 3/28/2022 22:41 | 3/29/2022 7:33 | 8.75 | 8.86 |
| 3/30/2022 22:40 | 3/31/2022 6:54 | 8.25 | 8.23 |
| 4/1/2022 22:46 | 4/2/2022 15:28 | 16.75 | 16.7 |

Dkt. No. 26 at ¶ 6. In almost every shift shown above, Hopkins benefitted from the rounding policy. This contradicts her assertion that the policy always resulted in downward adjustments. In sum, Hopkins has failed to show that the defendants' rounding policy resulted in a systematic and meaningful underpayment of wages in violation of the FLSA. The court therefore declines to authorize notice on this basis.

**C. Bonus Structure**

Hopkins has likewise failed to meet her burden regarding the bonuses. As background, the FLSA requires employees to be compensated with overtime pay "at a rate not less than one and one-half times" the employee's "regular rate" for hours worked in excess of forty in a week. 29 U.S.C. § 207(a). An employee's regular rate includes "all renumeration for employment paid to . . . the employee" with some exceptions. *Id*. § 207(e). This rate must include "non-discretionary bonuses." *Slaaen v. Senior Lifestyle Corp.*, No. 18-CV-1562-JPS, 2019 WL 1543973, at *2 (E.D. Wis. Apr. 9, 2019) (citing 29 U.S.C. § 207(e)(3)(a); 29 C.F.R. § 778.211(c)).

The Department of Labor has elaborated on the "discretionary" nature of bonuses, explaining what to look for:

> In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. . . .

8

> Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Most attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay. . . .
>
> The label assigned to a bonus does not conclusively determine whether a bonus is discretionary under section 7(e)(3). *Instead, the terms of the statute and the facts specific to the bonus at issue determine whether bonuses are excludable discretionary bonuses.* . . . Examples of bonuses that may be discretionary include bonuses to employees who made unique or extraordinary efforts which are not awarded according to pre-established criteria, severance bonuses, *referral bonuses for employees not primarily engaged in recruiting activities*, bonuses for overcoming challenging or stressful situations, employee-of-the-month bonuses, and other similar compensation.

29 C.F.R. § 778.211(a)–(c) (emphasis added).

Hopkins asserts that Champion Care offered multiple non-discretionary bonuses, including shift pick-up bonuses, sign on bonuses, traveling bonuses, and birthday bonuses. Champion Care explained each bonus in its response to Hopkins' interrogatories:

> The shift pickup bonus was an hourly incentive for the individuals that volunteered for extra shifts, particularly during high-demand and busy periods. The sign-on bonus required individuals to work 32 hours per week and maintain their employment without termination and the applicable bonus was paid in installments. The referral bonus was intended to assist with recruitment and was paid when individuals were referred, hired and actively employed. The travel bonus was offered as an incentive during critical staffing periods.

Dkt. No. 24-6 at 8. Hopkins provides four paystubs from The Bay at Burlington reflecting that on four occasions, she worked overtime during the week she received a bonus but that her overtime rate remained unchanged:

| Pay Date | Bonus Amount | Straight Overtime Rates | Overtime Rates Paid |
| --- | --- | --- | --- |
| April 8, 2022 | $2,977.75 | $40.50, $43.50 | $40.50, $43.50 |
| July 1, 2022 | $1,090.00 | $52.50, $55.50 | $52.50, $55.50 |
| November 4, 2022 | $400.00 | $52.50, $55.50 | $52.50, $55.50 |
| November 18, 2022 | $400.00 | $52.50, $55.50 | $52.50, $55.50 |

9

Dkt. No. 22 at 10 (citing Dkt. No. 24-12). According to Hopkins, the "straight" rates were based on her hourly rates of pay and the "rates paid" reflect what Champion Care and/or The Bay at Burlington ultimately paid her. She asserts that the defendants did not include the bonuses in her overtime calculation because she was only paid the straight rates.

As an initial matter, Hopkins has not demonstrated that she received any bonuses from The Bay at St. Ann and worked overtime at that facility. The only evidence in the record shows that she received four bonuses from The Bay at Burlington.[1] And even if Hopkins had received bonuses from The Bay at St. Ann, she has not shown that she worked overtime at the facility during the week she received the bonus. Director of Payroll Shoshan reports that Hopkins never worked overtime at The Bay at St. Ann. Dkt. No. 26 at ¶ 5. Accordingly, Hopkins has not shown that The Bay at St. Ann violated the FLSA and the court will decline to issue notice on that basis. The remaining analysis will focus on Champion Care and The Bay at Burlington.

To that end, the court finds Hopkins' evidence insufficient. As the Department of Labor notes, labels describing the bonus do not matter; the court must instead look at "the terms of the statute and the facts specific to the bonus at issue." 29 C.F.R. § 778.211(c). Other than the raw dollar amounts, the record contains no information describing the specific bonuses Hopkins received. It is possible, of course, that the bonuses were non-discretionary and therefore should have been included in the overtime calculation. It is also possible that the bonuses were entirely discretionary. For example, the regulation explains that referral bonuses are typically excludable as long as the employee is not primarily engaged in recruiting activities. *Id*. Perhaps Hopkins'

---

[1] In his declaration, Hopkins' counsel reported that, based on records produced in discovery, "there were eleven (11) pay periods in which Plaintiff received a 'Bonus' in addition to her hourly compensation." Dkt. No. 24 at ¶ 14. This confirms she received bonuses but does not specify the kind of bonuses they were. Contrary to her citations, the defendants' answer does not solve this mystery. They simply admitted that Hopkins "may have received a bonus." Answer ¶ 45.

10

$400 payments were referral bonuses, which Champion Care and/or The Bay at Burlington properly excluded from the regular rate. These are just hypotheticals. But they explain why Hopkins' evidence fails to show that the bonus policies violated the FLSA.

Putting that aside, the regulation also indicates that the bonus question is highly individualized. If the determination turns not on labels but on "the facts specific to the bonus at issue," then proceeding as a collective would make little sense. The evidence would be plaintiff-specific, making a single trial haphazard and inefficient.

In sum, Hopkins has failed to provide evidence that the bonus policies violated the FLSA or that she is similarly situated to any potential plaintiffs. The court therefore declines to authorize notice on this basis.

## CONCLUSION

For these reasons, Hopkins' motion for conditional certification and authorization of notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) (Dkt. No. 21) is **DENIED**. Given, that the court adopted *Swales* midstream during this litigation, however, it will allow Hopkins leave to refile a motion for court-authorized notice upon further discovery. The Clerk is directed to set this matter on the court's calendar for a telephone conference to address further proceedings after counsel have had an opportunity to discuss the matter themselves.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of February, 2025.

William C. Griesbach
United States District Judge